IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID LAND, §
§
Plaintiff, §
§
v. § CIVIL ACTION NO. H-15-2607
§
SHERIFF RAND HENDERSON, et al., §
§
Defendants.[1] §

## MEMORANDUM OPINION AND ORDER

The plaintiff, David Land, has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1) concerning the conditions of his confinement at the Montgomery County Jail, which is operated by the Montgomery County Sheriff's Office ("MCSO"). Pending before the court is Defendants' Motion for Summary Judgment filed by Montgomery County Sheriff Rand Henderson and Lieutenant Myrick ("Defendants' MSJ") (Docket Entry No. 45). Land has filed a Motion of Response to Defendants' Answers ("Plaintiff's Response") (Docket Entry No. 51) and a Motion Seeking That All Proceedings Be Sealed ("Plaintiff's Motion to Seal") (Docket Entry No. 54). After considering the pleadings, the exhibits, and the applicable law, the court will grant the

---

[1]The Complaint listed former Montgomery County Sheriff Tommy Gage, who has since retired, as the lead defendant. The court has substituted current Montgomery County Sheriff Rand Henderson, who succeeded Gage, as the proper party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Defendants' MSJ and will dismiss this case for the reasons explained below.

## I. Background

In December of 2013 Land was in custody at the Montgomery County Jail, pending criminal charges.[2] He was housed in administrative segregation because the nature of the charges against him (child pornography) and his status as a former sheriff's deputy, who previously worked as a detention officer at the Harris County Jail, put him at risk of violence by other inmates.[3]

While he was confined at the Montgomery County Jail in March of 2013, Land told his defense attorney that he had information about a fellow inmate housed near him in administrative segregation, Robert L. Wilson, who had made inculpatory admissions about murder charges that were pending against him.[4] On December 13, 2013, Land entered a guilty plea to the child-pornography charges against him.[5] Shortly before he entered that

---

[2]Complaint, Docket Entry No. 1, p. 4. For purposes of identification, all page numbers refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]Affidavit of Jeremiah Richards ("Richards Affidavit"), attachment 3 to Defendants' MSJ, Docket Entry No. 45-3, p. 3 ¶ 15.

[4]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 3; Complaint, Docket Entry No. 1, p. 4; Letter, attachment 2 to Complaint, Docket Entry No. 1-2, p. 1.

[5]Plaintiff's More Definite Statement, Docket Entry No. 25, pp. 1-2.

plea, Land sent a letter to Lieutenant Myrick at the Montgomery County Jail stating that he had overheard inculpatory remarks made by Wilson and that he wanted to "testify" against him.[6] According to Land, another officer at the Jail (Sergeant Dotson) contacted the District Attorney's Office by e-mail on December 9, 2013, regarding Land's offer to testify against Wilson.[7]

On December 16, 2013, Wilson returned to his cell following a visit with his criminal defense attorney who, coincidentally, also represented Land.[8] During this visit Wilson allegedly found out that Land had offered to testify against him, and Wilson began to threaten Land's life and the lives of his family.[9]

On January 7, 2014, Land allegedly sent another letter to Lieutenant Myrick, complaining about Wilson's threats.[10] Myrick, however, failed to intervene or move Land to another area of the Jail.[11] Land contends that he was subject to verbal abuse "night and day" and endured a "hostile environment" for a period of 106

---

[6]Letter, Docket Entry No. 45-1, pp. 6-7; Plaintiff's More Definite Statement, Docket Entry No. 25, pp. 13-16.

[7]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 3.

[8]Complaint, Docket Entry No. 1, p. 4; Plaintiff's More Definite Statement, Docket Entry No. 25, p. 2.

[9]Complaint, Docket Entry No. 1, p. 4.

[10]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 5.

[11]Complaint, Docket Entry No. 1, p. 4.

and day" and endured a "hostile environment" for a period of 106 days until he was transferred to the Texas Department of Criminal Justice ("TDCJ") on March 31, 2014.[12] During this time, Land claims that Wilson threatened him on a daily basis, reminding Land that Wilson could easily find him because Land would have to register as a sex offender for the rest of his life.[13]

Land believes that "Jail Administration" did not move him away from Wilson at the request of prosecutors and that Jail "staff" was "listening in" to overhear threats that could be used against Wilson in court.[14] Land complains that he was used as bait.[15] Land did not ultimately testify against Wilson, who reportedly entered a plea agreement in the case against him.[16]

Because of Wilson's threats, Land suffered recurring nightmares and developed ulcers in his stomach due to the mental anguish he experienced.[17] Arguing that his constitutional rights were violated by housing him in a "hostile environment," Land seeks

---

[12]Id.; Plaintiff's More Definite Statement, Docket Entry No. 25, p. 2 and pp. 7-8 ¶ 5.

[13]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 7.

[14]Complaint, Docket Entry No. 1, p. 4; Plaintiff's More Definite Statement, Docket Entry No. 25, p. 6.

[15]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 6.

[16]Id.

[17]Id. at 7.

damages from the defendants under 42 U.S.C. § 1983 and a formal apology for the psychological abuse that he endured.[18]

The court authorized service of process and requested an answer to the Complaint from Lieutenant Myrick and Sheriff Henderson.[19] These defendants now move for summary judgment, noting that Land did not exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing suit.[20] The defendants argue in the alternative that Land's claims fail as a matter of law because he does not show that Lieutenant Myrick violated a clearly established constitutional right and he does not otherwise overcome Myrick's entitlement to qualified immunity.[21] The defendants also argue that Land has not established the liability of Sheriff Henderson, who is sued in his capacity as a supervisory official.[22]

## II.  Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[18]Complaint, Docket Entry No. 1, pp. 3, 4.

[19]Order for Service of Process, Docket Entry No. 27; Supplemental Order for Service of Process, Docket Entry No. 34.

[20]Defendants' MSJ, Docket Entry No. 45, pp. 7-9.

[21]Id. at 9-18.

[22]Id. at 18-23.

-5-

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);
see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).
A fact is "material" if its resolution in favor of one party might
affect the outcome of the suit under governing law. Anderson v.
Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is
"'genuine'" if the evidence is sufficient for a reasonable jury to
return a verdict for the nonmoving party. Id.

    In deciding a summary judgment motion the reviewing court must
"construe all facts and inferences in the light most favorable to
the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th
Cir. 2010) (internal quotation marks and citation omitted).
However, the non-movant "cannot rest on [his] pleadings" where
qualified immunity is asserted. Bazan, et rel. Bazan v.
Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in
original).  Nor can the non-movant avoid summary judgment simply by
presenting "[c]onclusional allegations and denials, speculation,
improbable inferences, unsubstantiated assertions, and legalistic
argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d
344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of
Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a
non-movant cannot demonstrate a genuine issue of material fact with
conclusory allegations, unsubstantiated assertions, or only a
scintilla of evidence).  If the movant demonstrates an "absence of
evidentiary support in the record for the nonmovant's case," the

burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) (citations omitted). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Because Land was incarcerated when he filed his Complaint, this action is governed by the PLRA, which requires prisoners to

exhaust administrative remedies before filing suit in federal court. See 42 U.S.C. § 1997e(a). The Supreme Court has emphasized that § 1997e(a) mandates exhaustion of all administrative procedures before an inmate can file any suit challenging prison conditions. See Booth v. Churner, 121 S. Ct. 1819, 1825 (2001); Porter v. Nussle, 122 S. Ct. 983, 988 (2002); Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

To exhaust administrative remedies an inmate at the Montgomery County Jail is required to complete a three-step process.[23] First, the inmate must file a grievance with the Inmate Grievance Board, which will issue a reply.[24] Second, if the inmate is unsatisfied with the Inmate Grievance Board's reply, he must appeal that decision to the Jail Administrator.[25] Third, if the inmate is not satisfied with the Jail Administrator's decision, he must appeal to the Sheriff, whose decision is final.[26]

The record shows that Land was aware of the administrative remedy process, which is explained to all inmates in the Jail

---

[23]Defendants' MSJ, Docket Entry No. 45, p. 7 ¶ 4.

[24]Id. at 7-8 ¶ 4.

[25]Id. at 8 ¶ 4.

[26]Id.

Handbook,[27] and that "Grievance forms are available to any inmate."[28] There is no evidence that Land filed a grievance about his classification or the conditions of his housing assignment in administrative segregation.[29] Land concedes that he did not file a _formal_ grievance concerning the issues that he presents in his Complaint, explaining that he did not do so because he was denied access to grievance forms.[30] The defendants' evidence shows, however, that Land filed several formal grievances regarding issues unrelated to the Complaint, reflecting that he had access to the requisite forms while confined in administrative segregation.[31] Land's conclusory allegation that he was denied access to grievance forms is not sufficient to refute this evidence or raise a genuine issue of material fact. See Kidd v. Livingston, 463 F. App'x 311, 313, 2012 WL 614372, at *1 (5th Cir. 2012).

Land also appears to argue that the letter he sent to Lieutenant Myrick in January of 2014 complaining about Wilson's threatening behavior should be considered sufficient to exhaust the

----

[27]Id. ¶¶ 5-6; Acknowledgment of Receipt, Docket Entry No. 45-1, p. 8 (Land's acknowledgment that he received and read a copy of the Inmate Handbook).

[28]Richards Affidavit, attachment 3 to Defendants' MSJ, Docket Entry No. 45-3, p. 1 ¶ 3.

[29]Id. at 1-2 ¶¶ 3-4.

[30]Plaintiff's Response, Docket Entry No. 51, p. 2. Nor is there any evidence that Land filed any informal grievances.

[31]Inmate Grievance Forms, Docket Entry No. 45-1, pp. 3-5.

grievance process.[32] As the defendants note, however, Lieutenant Myrick was not a Jail Administrator.[33] There is no evidence that Jail Administration would have been aware of information imparted to Lieutenant Myrick in the letter.[34] Land cites no authority and the court has not found any case in which the writing of a letter, outside the context of a formal grievance procedure, was held sufficient to properly exhaust administrative remedies. The Fifth Circuit has repeatedly taken a "strict" approach, demanding proper compliance with administrative grievance procedures for purposes of satisfying the exhaustion requirement. See Butts v. Martin, 877 F.3d 571, 582 (5th Cir. 2017) (citing Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003)); see also Wilson v. Epps, 776 F.3d 296, 299-300 (5th Cir. 2015) (observing that substantial compliance grievance procedures is not enough to satisfy the exhaustion requirement) (citing Dillon, 596 F.3d at 268).

Based on this record Land has not shown that he exhausted administrative remedies regarding his claims or that the grievance process was unavailable to him, and he has not raised a material fact question on this issue. The Fifth Circuit has emphasized that "pre-filing exhaustion of prison grievance processes is mandatory" and that district courts lack discretion to excuse a prisoner's failure to exhaust his administrative remedies. Gonzalez v. Seal,

---

[32]Plaintiff's Response, Docket Entry No. 51, p. 2.

[33]Richards Affidavit, Docket Entry No. 45-3, p. 3 ¶ 12.

[34]Id.

702 F.3d 785, 788 (5th Cir. 2012). Because the record reflects that Land failed to exhaust available administrative remedies before filing this action, the defendants are entitled to summary judgment on this issue. Although this issue is dispositive, the court will also address the defendants' alternative arguments.

## B. Claims Against Lieutenant Myrick

The defendants state that all of the events that form the basis of Land's Complaint took place after he pled guilty and was convicted of the criminal charges against him on December 13, 2013.[35] The defendants argue that Land fails to demonstrate a violation of the Eighth Amendment to the United States Constitution, which governs claims concerning the conditions of confinement by convicted prisoners.[36] See Bell v. Wolfish, 99 S. Ct. 1861, 1869-70 (1979) (comparing standards under the Due Process Clause that apply to pretrial detainees with standards under the Eighth Amendment that apply to those convicted of a crime); Hare v. City of Corinth, Mississippi, 74 F.3d 633, 639 (5th Cir. 1996) (same). Arguing further that Land fails to establish that a constitutional violation occurred, Lieutenant Myrick moves for summary judgment on the grounds that he is entitled to qualified immunity from Land's claims against him.[37]

---

[35]Defendants' MSJ, Docket Entry No. 45, p. 15 ¶ 24.

[36]Id. at 15-18.

[37]Id.

1. <u>Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982)). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 107 S. Ct. 3034, 3039 (1987). To make this showing, a plaintiff must point to "controlling authority — or a robust consensus of persuasive authority — that defines the contours of the right in question with a high degree of particularity." <u>Morgan v. Swanson</u>, 659 F.3d 359, 371-72 (5th Cir. 2011) (citations and internal quotation marks omitted). While there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>al-Kidd</u>, 131 S. Ct. at 2083). This is an "exacting standard," <u>City and County of San Francisco,</u>

California v. Sheehan, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix, 136 S. Ct. at 308 (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Id. at 654 (quoting Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

2.  Conditions of Confinement Under the Eighth Amendment

As a convicted felon, Land's claims concerning the conditions of his confinement are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991) (quoting Estelle v. Gamble, 97 S. Ct. 285,

291 (1976)). The Eighth Amendment prohibits the use of excessive physical force by correctional officers and also imposes certain duties on prison officials, "who must provide humane conditions of confinement[.]" <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1976 (1994). Specifically, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" <u>Id.</u> (internal quotation marks and citations omitted).

The Supreme Court has recognized, however, that prison conditions may be "restrictive and even harsh" without violating the Eighth Amendment, <u>Rhodes v. Chapman</u>, 101 S. Ct. 2392, 2399 (1981), noting that "the Constitution does not mandate comfortable prisons[.]" <u>Id.</u> at 2400. To demonstrate a violation of the Eighth Amendment where conditions of confinement are concerned, a prisoner must demonstrate that his confinement resulted in a deprivation that was "objectively, sufficiently serious," such that it resulted in the denial of "the minimal civilized measure of life's necessities." <u>Farmer</u>, 114 S. Ct. at 1977 (quoting <u>Rhodes</u>, 101 S. Ct. at 2399); <u>Herman v. Holiday</u>, 238 F.3d 660, 664 (5th Cir. 2001). To make this showing a plaintiff must demonstrate that he was denied "some basic human need." <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995) (citations and internal quotation marks omitted). <u>See</u>, <u>e.g.</u>, <u>Palmer v. Johnson</u>, 193 F.3d 346, 354 (5th Cir. 1999) (finding that conditions violated the Eighth Amendment where inmates were herded into a small outdoor space, deprived of

protection from excessive cold and wind, and provided no sanitary means of disposing of their waste).

If a sufficiently serious deprivation is shown, a plaintiff must then show that prison officials acted with "deliberate indifference" to the effect this deprivation would have on his health and safety. Farmer, 114 S. Ct. at 1977 (citations omitted). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979. A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 1984.

The condition of confinement at issue concerns persistent verbal threats of harm by another inmate while Land was in administrative segregation, which reportedly caused Land to suffer recurrent nightmares, mental anguish, and stomach ulcers due to stress. As noted above, it is well established that prison officials have a duty to protect inmates from physical assault by

other inmates.  See Farmer, 114 S. Ct. at 1977 ("Being violently

assaulted in prison is simply not 'part of the penalty that

criminal offenders pay for their offenses against society.'")

(quoting Rhodes, 101 S. Ct. at 2399).  However, Land does not cite,

and the court has not found, any case which holds that an inmate

has a constitutional right to be protected from verbal threats from

another inmate.[38]

Assuming that the threats and the attendant level of mental

anguish posed a sufficiently serious deprivation of a basic human

need, Land does not allege facts showing that Lieutenant Myrick was

aware of the adverse effects on his health, but that he failed to

take reasonable measures to abate the problem with deliberate

indifference.  Although Land reportedly sent Lieutenant Myrick a

letter in January of 2014 complaining about the threats, he does

not allege facts showing that he alerted Myrick to any ill effects

on his health.  Moreover, at the time the threats were made Land

and Wilson were housed in administrative segregation where they

could not interact and there was no threat of physical harm.  Land

has not presented evidence showing that a reasonable officer in

---

[38]The Fifth Circuit has repeatedly held that verbal threats
against an inmate by a prison guard do not amount to a
constitutional violation and are not actionable under 42 U.S.C.
§ 1983.  See Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir.
2002); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997);
Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir. 1995)
(citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983));
Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993); Spicer v.
Collins, 9 F. Supp. 2d 673, 683 (E.D. Tex. 1998) (citations
omitted).

Lieutenant Myrick's position would have known that Land was unsafe or that the conditions of confinement posed a danger to Land's health. Under these circumstances Land does not demonstrate that Myrick violated his constitutional rights by failing to move him to another area of the Jail when he was first apprised of the threats.

Even assuming that a constitutional violation occurred, Land's claim that he was subjected to persistent verbal abuse in violation of the Eighth Amendment is not based on a particular holding or a robust consensus of cases of persuasive authority that places the question beyond debate. See Morgan, 659 F.3d at 371-72 (citing al-Kidd, 131 S. Ct. at 2084). Therefore, Land has not demonstrated that the challenged conduct violated a constitutional right that could be considered clearly established for purposes of qualified immunity. See Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015). As a result, Land fails to overcome Lieutenant Myrick's entitlement to qualified immunity; and the defendants are entitled to summary judgment on this issue.

## C. Claims Against Sheriff Henderson

Land sues Sheriff Henderson in his capacity as a supervisory official who is responsible for the care, custody, and control of inmates at the Montgomery County Jail alleging that he failed to properly train his employees to separate inmates who complain about persistent verbal threats.[39] A supervisory official cannot be held

---

[39]Plaintiff's More Definite Statement, Docket Entry No. 25, p. 8.

liable under § 1983 for the actions of subordinates "on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted). A supervisor may also be liable based on a failure to train or supervise if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Id. (quoting Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 117 S. Ct. 1382, 1391 (1997); City of Canton, Ohio v. Harris, 109 S. Ct. 1197, 1204-05 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under

§ 1983."). To establish the requisite deliberate indifference in this context, a plaintiff must show that the supervisory official had "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," but that the official nevertheless chose to retain that program. Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citation and internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

Land has not demonstrated that his constitutional rights were violated in this case. Even assuming that a violation occurred, he has not established a pattern of similar violations as the result of a failure to train officers at the Jail or that the Sheriff maintained a deficient training program with deliberate indifference to the likelihood that such violations would occur. Because Land has not raised a genuine issue of material fact on this issue, he fails to establish liability on the part of Sheriff Henderson or his predecessor, former Sheriff Tommy Gage, who was in charge of the Jail while Land was there. Accordingly, the defendants are entitled to summary judgment on this issue.

## IV.  Land's Motion to Seal

Citing the threats made by Wilson and concerns for his safety, Land has filed a motion to seal these proceedings.[40]  The defendants oppose the request, noting that court proceedings and judicial records are typically open and accessible to the public as a matter of common law.[41]

"Courts have recognized that the public has a common law right to inspect and copy judicial records." S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993) (citing Nixon v. Warner Communications, Inc., 98 S. Ct. 1306, 1312 (1978); Belo Broadcasting Corp. v. Clark, 654 F.2d 423, 429 (5th Cir 1981)). Access may be restricted at a district court's discretion "where court files might have become a vehicle for improper purposes." Id. "'[T]he district court's discretion to seal the record of judicial proceedings is to exercised charily,'" and "must balance the public's common law right of access against the interests favoring nondisclosure." Id. There is a "strong presumption that [court] proceedings should be subject to scrutiny by the public" by remaining unsealed. United States v. Holy Land Foundation for Relief and Development, 624 F.3d 685, 690 (5th Cir. 2010) (quoting United States v. Ladd, 218 F.3d 701, 704 (5th Cir. 2000)).

---

[40]Plaintiff's Motion to Seal, Docket Entry No. 54, p. 1.

[41]Defendants' Response to Plaintiff's Motion to Seal, Docket Entry No. 56, p. 1.

The Complaint in this case stems from threats that were made against Land while he was in custody at the Montgomery County Jail over four years ago. Land, who was recently released from state prison on parole, has not presented any evidence showing that he has been subjected to any additional threats, either by Wilson or others associated with him, since Land was transferred from the Montgomery County Jail to TDCJ in 2014. Moreover, Land's address is a matter of public record because he is subject to a registration requirement as a convicted sex offender. Under these circumstances, sealing these proceedings does not outweigh the public's right of access. Therefore, Plaintiff's Motion to Seal will be denied.

### V.  Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1.    Defendants' Motion for Summary Judgment (Docket Entry No. 45) is **GRANTED**.

2.    Plaintiff David Land's Motion Seeking That All Proceedings Be Sealed (Docket Entry No. 54) is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 20th day of June, 2018.

---

SIM LAKE
UNITED STATES DISTRICT JUDGE